UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAINA D. STANLEY, <br><br> *Plaintiff*, <br><br> v. <br><br> A BETTER WAY WHOLESALE AUTOS, INC. <br> *Defendant*. | No. 3:17-cv-01215-MPS |

**RULING ON MOTION TO STAY AND COMPEL ARBITRATION**

Shaina D. Stanley ("Stanley") brings this suit against A Better Way Wholesale Autos, Inc. ("ABW") claiming violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.* Stanley alleges that, in connection with her purchase of a used vehicle from ABW, ABW charged Stanley for several services that were not properly disclosed to her and that she did not want. Citing an arbitration provision in one of the two contracts that ABW and Stanley signed, ABW now moves to stay litigation and compel arbitration of Stanley's claims.

For the following reasons, ABW's motion to compel arbitration and stay this action (ECF No. 15) is DENIED.

**I.     Factual Background**

The following facts are drawn from Stanley's complaint, along with the exhibits attached to the parties' briefs.

1

On February 10, 2017, Stanley purchased a 2011 Mazda Tribute from ABW. (*See* ECF No. 15-2 at 1.) The parties executed two documents on February 10, 2017 to finalize the purchase: (1) a Retail Purchase Order (the "Purchase Order") and (2) a Retail Installment Contract (the "Installment Contract"). (*Id.*; ECF No. 20-1 at 4.) The Purchase Order set the key terms of the purchase of the vehicle, such as the model, price, any warranties that came with the vehicle, and any additional services or fees relating to the car; by contrast, the Installment Contract provided the terms of the financing arrangement for the portion of the purchase price that Stanley chose to finance. (ECF No. 15-2 at 2; ECF No. 20-1 at 4–7.) The Purchase Order listed the sales price as $8,362.52 and included charges for a dealer conveyance fee of $598, a vehicle identification number ("VIN") etching fee of $198, an oil changes for life contract of $599, and GAP insurance[1] of $895. (ECF No. 15-2 at 2.) The Purchase Order reflected that Stanley made a down payment of $2,000. (*Id.*) The Installment Contract financed Stanley's remaining balance of $6,362.52 and similarly mentioned the GAP insurance charge of $895. (ECF No. 20-1 at 4.)

Stanley alleges that several charges in the Purchase Order and Installment Contract were not properly disclosed to her. She claims that an advertisement for the car did not include the dealer conveyance fee that she was ultimately charged. (ECF No. 1 at ¶ 7.) She also alleges that ABW told her that the vehicle warranty included free oil changes for life, but the line item for oil changes on the Purchase Order was misaligned and a line ran through the charge, so she was unaware of that separate charge. (*Id.* at ¶¶ 9, 12.) This charge was also not itemized in the Installment Contract, because according to Stanley it was included as part of the cash price of the vehicle. (*Id.* at ¶ 19.) Stanley further claims that ABW did not provide her the option to decline

---

[1] According to Stanley, GAP insurance provides that, in the event that a vehicle is stolen or totaled, the creditor will accept insurance proceeds in full satisfaction of the outstanding indebtedness even if those proceeds are less than the amount owed. (*See* ECF No. 1 at 16.)

the VIN etching fee listed in the Purchase Order. (*Id.* at ¶ 13.) Finally, Stanley alleges that ABW mandated that she purchase GAP coverage as a condition of the purchase, even though ABW knew that Stanley would not receive any benefit from GAP coverage because the amount financed was substantially below the vehicle's book value. (*Id.* at ¶¶ 17–18.)

Both the Purchase Order and the Installment Contract contain arbitration clauses. The Purchase Order provides that either Stanley or ABW can elect to submit certain claims to the American Dispute Resolution Center ("ADRC"):

> Any claim or dispute, whether in contract, tort, statute or otherwise including the interpretation and scope of this clause, and the arbitrability of the claim or dispute, between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . . *Binding arbitration shall be provided by American Dispute Resolution Center, Inc.*, under its rules of Expedited Commercial Arbitration to be applied provided there is less than $75,000.00 in dispute . . . In the event of the American Resolution Center, Inc. [sic] shall be unwilling or unable to hear the matter, the matter may be arbitrated by any other arbitration organization or individual arbitrator that we have mutually agreed upon. . . .

(ECF No. 15-2 at 3, ¶ 9 (emphasis added).) The Installment Contract contains similar language, but specifies that Stanley may choose that the arbitration be conducted by the American Arbitration Association ("AAA") or another body that ABW approves:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . . *You may choose the American Arbitration Association . . . or any other organization to conduct the arbitration subject to our approval.* . . . If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control.

(ECF No. 20-1 at 7 (emphasis added)).) Both the Installment Contract and Purchase Order contain merger clauses. (ECF No. 15-2 at 2 ("The front and back hereof comprise the entire agreement affecting this order and no other agreement or understanding of any nature concerning same has been made or entered into."); ECF No. 20-1 at 5 ("This contract contains the entire agreement between you and us relating to this contract.").) The Installment Contract further provides that "[f]ederal law and the law of the state of our address shown on the front of this contract [*i.e.*, Connecticut law] apply to this contract." (ECF No. 20-1 at 7.)

On or about May 3, 2017, Stanley submitted a demand for arbitration to the American Arbitration Association (the "AAA") seeking $4,167 in damages from ABW on the basis of the non-disclosures in the Purchase Order and Installment Contract. (*Id.* at 2.) On June 23, 2017, the AAA wrote to ABW's counsel (the same who has appeared in this action) and advised that, pursuant to R-12 of the AAA Consumer Rules, ABW had to submit its consumer agreement for expedited review and also to the AAA's database. (ECF No. 20-2 at 2.) ABW was required to pay the fees associated with those submissions, as well as filing fees and a deposit fee for the arbitrator, totaling $3,650. (*Id.*) On July 20, 2017, the AAA sent ABW a second letter, noting that it had not received the required fees and that ABW's payment must be received by August 3, 2017. (ECF No. 20-3 at 2.) The July 20 letter warned that, "should the business not comply with our request by [August 3, 2017], we may decline to administer any other consumer dispute involving this business" and "should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." (*Id.*) On August 19, 2017, the AAA sent ABW a third letter advising ABW that, since it had not received the required fees, the AAA was administratively closing the arbitration and pursuant to R-1(d), "either party may choose to submit its dispute to the appropriate court for resolution." (ECF No. 20-4 at 2.) The AAA also

requested that ABW remove AAA's name from its arbitration clause due to ABW's failure to adhere to AAA policies. (*Id.*) In the interim, Stanley filed this action in this Court on July 20, 2017. (ECF. No. 15-2.)

On August 30, 2017, ABW's counsel wrote to the AAA asking it to reverse its decision declining to administer the arbitration. (ECF No. 20-5 at 2.) In that letter, ABW's counsel said that "ABW agree[d] that this matter is properly before the AAA" and purported to invoke the arbitration clause. (*Id.*) The AAA declined to reopen the case, writing in a September 7, 2017 email to both parties that, given that Stanley had filed in Court, the AAA would not reopen the arbitration unless Stanley consented. (ECF No. 20-6 at 2.) On September 20, 2017, ABW filed the instant motion to stay the proceedings in this Court and compel Stanley to arbitrate before the ADRC. (ECF No. 15.)

**II.     Legal Standard**

"In deciding motions to stay or compel arbitration, courts apply a standard similar to that applicable for a motion for summary judgment." *Boroditskiy v. European Specialties, LLC*, 2018 WL 2538509 (S.D.N.Y. June 4, 2018). That standard requires this Court to "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits" and "draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002), *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011)). However, where the "undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the

basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, Nat'l Ass'n*, 661 F.3d at 172 (internal quotation and citations omitted).

## III. Discussion

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or equity for the revocation of any contract." 9 U.S.C. § 2. The FAA thus requires courts to "place arbitration agreements on an equal footing with other contracts," and "enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA provides that a district court must, on application of a party, stay the action if it is satisfied that the "issue involved in [the action] is referable to arbitration" under an agreement between the parties, "providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. The FAA also allows a party to petition a district court for an order directing that "arbitration proceed in the manner provided for in such agreement." *Nicosia*, 834 F.3d at 229 (quoting 9 U.S.C. § 4).

ABW argues that, notwithstanding the failed AAA arbitration, the Court should now stay this action and compel Stanley to arbitrate before the ADRC under the arbitration provision in the Purchase Order, because the Purchase Order and Installment Contract are separate agreements, the two arbitration provisions do not conflict, and ABW's participation in the AAA arbitration did not waive its right to arbitrate. (*See* ECF No. 23 at 1–5.) I disagree. In short, the arbitration provisions, which appear in two contracts drafted by ABW to memorialize the vehicle purchase and financing transaction, must be read together and, because the combined agreement is ambiguous as to the identity of the arbitrator, it must be construed in Stanley's favor. This means that the AAA, not the ADRC, is the proper arbitration panel, and ABW forfeited its right to

6

arbitrate by refusing to participate in the AAA arbitration. Accordingly, I deny ABW's motion to stay and compel arbitration.

A. <u>The Parties Agreed to Arbitrate Disputes Before the AAA</u>

No one contests that the parties agreed to arbitrate their disputes; the battle, instead, is over which arbitration body—the AAA or the ARDC—is the proper one here and whether ABW has waived its right to arbitrate. Further, neither party has suggested that this Court should refrain from deciding these two issues and instead submit the matter to arbitration. Therefore, I will decide both issues.[2]

---

[2] Both arbitration agreements provide that "the arbitrability of the claim or dispute" is a question the arbitrator must decide, if either side elects to arbitrate. (ECF No. 15-2 at 3, ¶ 9; ECF No. 20-1 at 7.) Assuming that the dispute reflected in the parties' briefs is a dispute about "arbitrability," I note again that neither side has invoked this provision to suggest that I should not decide the issues presented in the motion to stay and compel arbitration. I also note that, in the Second Circuit, courts have for many years decided whether a party has waived its right to arbitrate through pre-litigation conduct. *See Zhang v. Wang*, 317 F. App'x 26, 28 (2d Cir. 2008) (assessing waiver based on pre-litigation conduct); *Lane, Ltd. v. Larus & Brother Co.*, 243 F.2d 364, 367 (2d Cir. 1957) (same); *Schreiber v. Friedman*, No. 15CV6861CBAJO, 2017 WL 5564114, at *8 (E.D.N.Y. March 31, 2017) (surveying Second Circuit history of arbitrability of waiver of pre-litigation conduct). Indeed, in connection with motions to stay arbitration under 9 U.S.C. § 3, the Second Circuit has made clear that the issue of whether a party has waived its right to arbitrate or is otherwise "in default in proceeding" with arbitration, as set forth in the proviso in Section 3, is an issue for the court. *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 454 (2d Cir. 1995) (although Second Circuit held in *World Brilliance Corp. v. Bethlehem Steel Co.,* 242 F.2d 262 (2d Cir. 1965) that, in petitions to compel arbitration under 9 U.S.C. § 4, "issues of waiver … were properly resolved by the arbitrators, not the district court," "[o]ur decision in *World Brilliance* did not call into question … a parallel line of cases that considers waiver to be an equitable defense to a stay application under [Section] 3 of the FAA, which a court is empowered to consider."). In this case, although ABW has filed what it calls a "Motion to Stay and Compel Arbitration" (ECF No. 15), in its brief, it relies on 9 U.S.C. § 3 and makes no mention of 9 U.S.C. § 4. (ECF No. 15-1 at 2 ("Under 9 U.S.C. [Section] 3, the current proceedings must be stayed.")). There is thus some basis to treat this case as falling under the "equitable defense" to a stay application embodied in Section 3's "default" proviso, "which a court is empowered to consider." *Distajo*, 66 F.3d at 454. In any event, because in this case the AAA has already found that ABW has forfeited its right to arbitrate by refusing to tender the requisite fees and has authorized the parties to resolve their differences in court, it would ill serve the principles of speed and economy that animate the FAA to send this matter back to an arbitration body for a second determination of whether the parties are required to arbitrate. *See*

With exceptions not applicable here, courts generally construe agreements to arbitrate in accordance with the governing state's law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Though neither party has explicitly briefed the issue, I assume that Connecticut law, as the law selected by the choice of law provision in the Installment Contract, applies. (ECF No. 21-1 at 7, ¶ 7 ("Federal law and the law of the state of our address shown on the front of this contract [Connecticut] apply to this contract.").) Under Connecticut law, "ambiguity in agreements should be construed against the drafter." *Gambardella v. Pentec, Inc.*, No. 3:01CV1827(JBA), 2003 WL 22119182, at *3 (D. Conn. Aug. 25, 2003) (citation omitted); *see also PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (noting that "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it applies in interpreting arbitration agreements.") (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995)).[3] "If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." *Gambardella*, 2003 WL 22119182, at *3 (citation omitted).

ABW argues that the Installment Contract and Purchase Order are entirely separate agreements, and so it is free to compel arbitration before the ADRC under the Purchase Order. (ECF No. 23 at 1.) In *Farrell v. Road Ready Used Cars, Inc.*, 2018 WL 1936143 (D. Conn. Apr. 24, 2018), Chief Judge Hall found, in a similar transaction involving the purchase of a used vehicle, that an installment contract and purchase order should be interpreted together under Connecticut

---

*Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 479–80 (1989) ("legislative policy embodied in the Arbitration Act … strongly favors the enforcement of agreements to arbitrate as a means of securing prompt, economical and adequate solution of controversies.").

[3] The Supreme Court has explained that the purpose of this common law rule is "to protect the party who did not choose the language from an unintended or unfair result." *Mastrobuono*, 514 U.S. at 63.

8

law, notwithstanding the presence of merger provisions in both agreements. In *Farrell*, the defendant moved to compel arbitration based on an arbitration provision in the purchase order for a used vehicle, which was not present in the installment contract. *Id.* at *3. In response, the plaintiff argued, among other things, that the parties had not agreed to arbitrate because Connecticut employed a "single document rule" that nullified the purchase order upon the signing of the installment contract. *Id.* Chief Judge Hall disagreed, noting that Connecticut follows the "common law contract principle permitting the construction of multiple documents together as part of a single transaction." *Id.* (citing *A-1 Auto Service, Inc. v. Horkavy*, No. CV 960392187, 2001 WL 686821, at *3 (Conn. Super. Ct. May 24, 2001)). I similarly conclude that the Purchase Order and Installment Contract here must be construed together. (ECF No. 15-2 at 2; ECF No. 20-1.) Stanley's claims arise under both agreements. (*See* ECF No. 1 at ¶ 44 (ABW violated TILA by requiring Stanley to purchase GAP as a condition of financing the transaction [as reflected in the Installment Contract]); *id.* at ¶ 46(j) (ABW "obscured the charge for the oil changes for life contract on the Purchase Order due to misalignment," in violation of CUPTA).) Further, both were executed on the same day and both evidence the same overall vehicle purchase transaction. Under such circumstances, Connecticut courts construe "multiple writings regarding the same transaction . . . together to determine the intent of the parties." *Mongillo v. Comm'r of Transp.*, 214 Conn. 225, 229 (1990). Accordingly, I will construe the Installment Contract and Purchase Order together, notwithstanding the merger clauses in both agreements.

Read together, the Purchase Order and Installment Contract are ambiguous as to whether the AAA or ADRC must arbitrate disputes. The two arbitration provisions cover an almost

identical scope of disputes.[4] The Purchase Order provides that "[b]inding arbitration *shall* be provided by [ADRC]" for those disputes (ECF No. 15-2 at 3, ¶ 9 (emphasis added)); by contrast, the Installment Contract provides that "[y]ou [Stanley] may choose the [AAA], or any other organization to conduct the arbitration subject to our approval." (ECF No. 20-1 at 7.) ABW argues that these two provisions are reconcilable, in part because the Installment Contract does not specifically require AAA arbitration, but provides that Stanley "may" select another organization, such as the ADRC. (ECF No. 23 at 2.) ABW's reading omits two conditions that must be satisfied under the Installment Contract before a body other than the AAA may conduct the arbitration— that Stanley must first select that other arbitration forum, and that ABW must then approve that choice. In other words, while the Purchase Order automatically requires that any disputes be arbitrated by the ADRC, the Installment Contract allows arbitration of the same universe of disputes before the ADRC only if Stanley exercises her contractual discretion to select the ADRC and ABW approves—which did not happen here. Because the two contracts differ on whether Stanley *may* select the AAA or *must* proceed before the ADRC to arbitrate essentially the same dispute, the Installment Contract and Purchase Order support two different readings of the appropriate arbitral forum and are thus ambiguous.[5]

---

[4] *Compare* ECF No. 15-2 at 3, ¶ 9 ("Any claim or dispute, whether in contract, tort, statute or otherwise . . . between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship . . . .") *and* ECF No. 20-1 at 7 ("Any claim or dispute, whether in contract, tort, statute or otherwise . . . between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship . . . .").

[5] ABW's brief also highlights that the two arbitration clauses permit the use of similar rules and fee structures, which I need not address since I conclude that the contracts' selection of the arbitral forum is ambiguous. (*See* ECF No. 23.)

The complaint, as well as the contracts themselves, indicate that ABW either drafted each contract or elected to use it as its standard form. (ECF No. 1 at ¶¶ 11, 14; ECF No. 15-2 at 2 ("A Better Way Wholesale Autos . . . Retail Purchase Order); ECF No. 20-1 at 4 (Form No. 553-CT-ARB, "Retail Installment Contract – Simple Finance Charge (With Arbitration Provision)"). Accordingly, because ABW, not Stanley, selected the contractual language, any ambiguity must be construed in Stanley's favor. Thus, I must construe the parties' combined agreement to permit Stanley to require arbitration before the AAA, and must reject ABW's interpretation that she is required to arbitrate before the ADRC.

B. ABW Forfeited Its Right to Arbitrate

Stanley already brought an action to arbitrate her dispute with ABW before the AAA. (ECF No. 20-1 at 2.) ABW does not contest this, but states that "[t]he parties attempted to arbitrate the matter and, due to a dispute between AAA and ABW, the matter was not accepted." (ECF No. 23 at 4–5; *see* ECF No. 15-1 at 3.) But the undisputed facts in the record reveal more than a simple "dispute." ABW refused to pay the required fees to arbitrate before the AAA or otherwise respond to the AAA's requests, despite the AAA's repeated requests that it do so. (ECF No. 20-2 at 2; ECF No. 20-3 at 2.) In other words, ABW refused to play by the rules that it had itself agreed to.

"There is a strong presumption in favor of arbitration, and waiver of the right to arbitration is not to be lightly inferred." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104–05 (2d Cir. 2002) (citation and internal alterations omitted). To show waiver based on a pre-litigation refusal to arbitrate, other courts in this Circuit have required a showing that the

defendant (i) engaged in conduct that is inconsistent with the right to arbitrate that (ii) prejudiced the plaintiff. *See Schreiber*, 2017 WL 5564114, at *9, *11–12.[6] Both factors are present here.

First, the Second Circuit has recognized that a party's unjustified refusal to respond to a valid arbitration demand constitutes a waiver:

> A party cannot raise unjustifiable objections to a valid demand for arbitration, all the while protesting its willingness in principle to arbitrate and then, when the other side has been forced to abandon its demand, seek to defeat a judicial determination by asking for arbitration after suit has been commenced.

*Lane*, 243 F.2d at 367; *see also Zhang*, 317 F. App'x at 28 (recognizing under New York law that a "refusal by [a party] to arbitrate upon demand duly made by the other side constitutes . . . a waiver," as evidenced by "a positive and unequivocal election to ignore his or her arbitration rights.") (citations omitted).

Here, the record indicates that after Stanley submitted her demand to the AAA in May 2017, ABW made no effort to respond for over three months either to Stanley's demand or the AAA's efforts to collect the arbitration fees that ABW was required to pay. (*See* ECF Nos. 20-2, 20-3, 20-4.) ABW has presented no reason why its initial failure to respond to the AAA arbitration was justified, and its undisputed conduct following the initiation of this litigation suggests otherwise. Following three months of silence from ABW, the AAA terminated the dispute on August 19, 2017. (ECF No. 20-4.) Eleven days later, on August 30, 2017, the ABW sent its only response in the record to AAA, asking it to reverse its decision and enclosing the required fees. (ECF No. 20-5.) Further, ABW explicitly admitted in its letter that "ABW *agrees*

---

[6] Because this case concerns pre-litigation conduct, I decline to apply the typical factors for waiver under *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 626 F.3d 156, 159 (2d Cir. 2010), which governs whether a party waived arbitration <u>by litigating</u> the dispute in question. As the Second Circuit has acknowledged, "[a]n inquiry into whether an arbitration right has been waived is factually specific and not susceptible to bright line rules." *Thyssen*, 310 F.3d at 105.

that this matter is properly before the AAA," flatly contradicting its current position before the Court that the ADRC is the appropriate forum. (*Id.* (emphasis added).) The AAA declined to reopen the dispute absent Stanley's consent, citing her recently filed court case. (ECF No. 20-6.)

In the absence of any other explanation in the record, ABW's repeated failures to respond to the AAA or pay the required fees, followed by its opportunistic reversal after the AAA's decision to terminate the dispute and its current attempt to force Stanley to arbitration before a different body, smack of "an intentional pattern of gamesmanship and delay." *Schreiber*, 2017 WL 5564114, at *11 (citation omitted). Accordingly, the Court concludes that ABW's conduct amounts to a waiver of its right to arbitrate. *See Lane*, 243 F.2d at 367 (holding that "by refusing to arbitrate the precise questions involved in this suit, [defendant] had forfeited its own right to arbitrate"); *Schreiber*, 2017 WL 5564114, at *11 ("Friedman's failure to submit to arbitration, delay tactics, and noncompliance with the Rabbinical Courts' orders amount to a waiver of his right to compel arbitration"); *see also In Re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 46 (1st Cir. 2005) (holding that defendant's blanket refusal to participate in AAA arbitration for six months until the arbitration was dismissed constituted waiver of the right to arbitrate).

Second, Stanley has clearly been prejudiced by ABW's refusal to participate in the AAA arbitration.[7] As the Second Circuit has emphasized, "[t]he key to a waiver analysis is prejudice." *Thyssen*, 310 F.3d at 105. Stanley has shown "prejudice due to excessive cost and time delay," based on those costs she incurred resulting from ABW's refusal to participate in the AAA arbitration. *Id.* Especially where, as here, "the record strongly suggests a deliberate strategy

---

[7] Both parties appear to dispute whether Stanley would be prejudiced by arbitration before the ADRC. (ECF No. 23 at 3–4; ECF No. 20 at 8–9.) The question is not whether future arbitration would prejudice Stanley, but rather whether ABW's pre-litigation refusal to arbitrate before the AAA has prejudiced Stanley. *See Schreiber*, 2017 WL 5564114, at *12.

13

unilaterally designed to delay the arbitration proceedings," courts have found that the costs involved in submitting a "doomed AAA demand for arbitration, in filing its district court complaint," and in defending a motion to compel are sufficient to constitute prejudice. *Tyco*, 422 F.3d at 46; *see Schreiber*, 2017 WL 5564114, at *12 (finding prejudice where "the costs that [plaintiff] has incurred are the result of the fact that [defendant] initially refused to arbitrate and only sought to invoke his right to arbitrate after [plaintiff] filed suit."); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005) ("[W]e have no trouble concluding that the delay and costs incurred by Brown are prejudicial for the purpose of waiver analysis."). Accordingly, Stanley has demonstrated sufficient prejudice to warrant a finding of waiver.

My conclusion that ABW waived its right to arbitrate is consistent with other courts' approaches where defendants have failed to pay required AAA fees or respond to AAA notices. In *Spano v. V & J Nat'l Enterprises, LLC*, the plaintiff became aware of an agreement requiring arbitration after he commenced litigation and accordingly filed an arbitration demand with the AAA. 264 F. Supp. 3d 440, 449 (W.D.N.Y. 2017). Defendants moved in court to compel plaintiff to arbitrate. *Id.* However, like ABW, the *Spano* defendants did not respond to the AAA's correspondence requesting the payment of filing fees for almost two months. *Id.* The AAA terminated the proceeding due to the defendants' failure to pay the required fees, and two business days later, defendants attempted to make the required payment. *Id.* at 456. The *Spano* court denied the defendants' motion to compel, finding that the "glaring absence of *any response*" to the AAA letters until the termination letter constituted a waiver, and that both the delay and the additional litigation costs plaintiff had to expend constituted prejudice. *See id.* at 457–58. *Spano* relied on *Brown,* 430 F.3d 1004, where the Ninth Circuit similarly denied a defendant's motion to compel based on its pre-litigation failure to respond to AAA letters or pay

14

the AAA filing fees. In that case, the court cogently explained that permitting such a defendant to selectively enforce its arbitration rights would frustrate the national policy in favor of arbitration:

> If we took [the defendants'] view and allowed [them] to compel arbitration notwithstanding [their] breach of the arbitration agreement, we would set up a perverse incentive scheme. Employers like [defendants] would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them. This tactic would be costless to employers if they were allowed to compel arbitration whenever a frustrated but persistent employee eventually initiated litigation. We decline to adopt a rule that would encourage companies to refuse to participate in properly initiated arbitration proceedings.

430 F.3d 1004, 1012. Though *Brown* ultimately analyzed the defendants' conduct as a breach of contract, it noted in *dicta* that the court "would have no difficulty finding that [defendants] waived [their] right to arbitrate [plaintiff's] claims," because the defendants' "refusal to arbitrate after being served with [plaintiff's] notice of intent to arbitrate was an act inconsistent with th[e] right [to arbitrate]" and plaintiff was prejudiced by the delay and costs involved as "[s]he chose to arbitrate, and when she was rebuffed by [defendants], she sued as a last resort." 430 F.3d at 1012–13. ABW's refusal here to respond to the AAA's letters or pay the required fees until after the AAA gave up and allowed this litigation to proceed three months later is essentially indistinguishable from the conduct of the defendants in these cases. Accordingly, because ABW waived its right to arbitrate, I DENY its motion to compel and stay the proceedings.

## IV. Conclusion

For the reasons discussed above, ABW's Motion to Compel Arbitration and Stay the Action (ECF No. 15) is DENIED. The parties' joint Rule 26(f) report is due 14 days from the date of this ruling.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut

August 15, 2018